**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

CHARLENE MORRIS, on behalf of herself and all others similarly situated,

                    Plaintiff,

    v.

WELCH FOODS INC., A COOPERATIVE, and PIM BRANDS, INC.,

                    Defendants.

Case No. 6:24-cv-6385 (FPG)

**AMENDED CLASS ACTION COMPLAINT**

-----------------------------------------------------------------X

Plaintiff Charlene Morris, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against defendant Welch Foods Inc., A Cooperative, and defendant PIM Brands, Inc. (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1. This action seeks to redress Defendants' false and misleading marketing campaign for their "Fruit and Yogurt" product line which suggests that their *Fruit 'n Yogurt Snacks* contain "creamy yogurt" (when they do not) and are healthy for consumers to eat (when they are not). Rather, Defendants' product is covered in a candy-like coating designed to provide the illusion of health while delivering the harms of an ultra-processed food.

2. Defendants' product packaging prominently features images of different varieties of fresh fruit being covered in a creamy yogurt dip, the visual impact of which is reinforced by the words "real fruit surrounded by creamy yogurt." The front of *Fruit 'n Yogurt Snacks* packages, which come in three fruit flavors, is shown here:

1





3. The phrase "Surrounded by Creamy Yogurt" would be interpreted by any reasonable consumer as a guarantee that *Fruit 'n Yogurt Snacks* are made with creamy yogurt, as well as real fruit, and are healthy to consume. Yogurt is widely understood to be a healthy and

2

nutritious product containing calcium, protein, phosphorus and B Vitamins, as well as bacteria that is beneficial to the gut biome.[1]

4.  The ingredient lists on the packaging for all three varieties of *Fruit 'n Yogurt Snacks* represent that the products contain what Defendants misleadingly call a "yogurt coating." The "yogurt coating" is made from sugar, palm kernel oil, whey powder, nonfat milk powder, yogurt powder (cultured whey and nonfat milk), titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (Vitamin C), Vitamin A palmitate, Vitamin D3. A representative ingredient list from the Blueberry-Acai variety is copied below:

> **Fruit Center** (grape, pear, blueberry and acai), sugar, corn syrup, modified corn starch and/or rice flour, pectin, citric acid, sodium citrate, natural flavor, fruit and vegetable juice (color), spirulina extract (color), **yogurt coating** sugar, palm kernel oil, whey powder, nonfat milk powder, yogurt powder (cultured whey and nonfat milk), titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (vitamin C), vitamin A palmitate, vitamin D3.

5.  The "yogurt coating" contains several ingredients known to be unhealthy for people to consume in their ultra-processed form, including palm kernel oil, palm oil, titanium dioxide, carnauba wax (as used to polish cars), spirulina extract, and sodium citrate.

6.  Notably, the ingredient list does not include active bacterial cultures, a necessary component of yogurt.

7.  Essentially, in a visual and semantic sleight of hand, Defendants substitute an unhealthy ultra-processed candy-like coating for a healthy product (yogurt).

---

[1] Harvard T.H. Chan School of Public Health, *Yogurt*. (Updated November 2019). The Nutrition Source, https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited May 16, 2024).

3

8. More evidence is emerging every day that diets rich in ultra-processed foods are associated with "increased risks for premature death, cardiovascular disease, mental health disorders, diabetes, obesity, and sleep problems."[2]

9. Consumers, like Plaintiff, who purchased Defendants' *Fruit 'n Yogurt Snacks* have been deceived by Defendants' false and misleading claims that this product contains "creamy yogurt," when it does not, and is healthy to consume, when it is not, and are entitled to redress through this action for Defendants' deceptive conduct.

## THE PARTIES

10. Plaintiff Charlene Morris is an individual who resides in Rochester, New York.

11. Defendant Welch Foods Inc., a Cooperative, is a Michigan corporation with its principal place of business in Massachusetts.

12. Defendant PIM Brands, Inc., is a Delaware corporation with its principal place of business in New Jersey.

13. Defendants market, sell, and distribute various fruit-based juices and food products, including *Fruit 'n Yogurt Snacks*.

14. Defendants market, sell, and distribute *Fruit 'n Yogurt Snacks* in New York and throughout the United States, including, but not limited to, through mass retailers such as Stop & Shop and Target, as well as on-line retailers such as Amazon, and through vending machines.

15. Defendants are responsible for the marketing, advertising, labeling, and packaging of the *Fruit 'n Yogurt Snacks*.

---

[2] Heidi Goodman, Ex. Ed. Harvard Health Letter, *More evidence that ultra-processed foods harm health*. June 1, 2024, Harvard Health Publishing. https://www.health.harvard.edu/nutrition/more-evidence-that-ultra-processed-foods-harm-health (last visited May 21, 2024).

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendants are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

17. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

18. This Court may exercise jurisdiction over the Defendants because they have sufficient minimum contacts in New York and purposely avail themselves of the markets within New York through the promotion, sale, marketing, and distribution of their products, thus rendering jurisdiction by this Court proper and necessary.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendants have marketed and sold the products at issue in this action within this judicial district and have done business within this judicial district.

**FACTUAL BACKGROUND**

**I.    Defendants Market *Fruit 'n Yogurt Snacks* as Healthy and as Containing "Creamy Yogurt," When, in Fact, They Do Not Contain Yogurt and Instead Contain Unhealthy Ultra-processed Ingredients**

20. Consumers increasingly are becoming aware of the benefits of living a healthy lifestyle, including eating nutritious foods.

21. Yogurt, which has been made and consumed by humans for thousands of years, is made when heated milk is combined with specific types of bacteria resulting in a thick, creamy

5

product.[3]  While yogurt is a rich source of calcium and protein, it also contains live bacteria which, studies suggest, may be beneficial to the gut biome.[4]  Regular consumption of yogurt is associated with reduced risk of obesity and chronic diseases,[5] and may protect against heart disease[6] and Type II diabetes.[7]  These health benefits of yogurt, as well as its nutritional value, are widely known to consumers and drive consumer decision-making.  Indeed, "[o]ver the last 50 years, yogurt has shifted from being perceived as a specialty health food item to being a beloved mainstream staple in America."[8]

22.    Regrettably, Defendants can lay no legitimate claim as to these properties benefiting its consumers, as its *Fruit 'n Yogurt Snacks* do not contain "creamy yogurt" or even yogurt at all.

23.    Rather, the Product contains what Defendants misleadingly describe as a "yogurt coating," which is, essentially, a vanilla-flavored candy-like coating whose primary ingredient is

---

[3] Harvard T.H. Chan School of Public Health. *Yogurt* (last reviewed November 2019), https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited May 17, 2024)(citing the studies below in footnotes 4 through 6).

[4] D.J. Lisko et al., *Effects of Dietary Yogurt on the Healthy Human Gastrointestinal (GI) Microbiome.* 2017 Microorganisms. 5(1), https://www.mdpi.com/2076-2607/5/1/6.

[5] Dariush Mozaffrian, et al. *Changes in Diet and Lifestyle and Long-Term Weight Gain in Women and Men.* 2011 N Engl J Med. 364:2392-404, https://www.nejm.org/doi/10.1056/NEJMoa1014296?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200www.ncbi.nlm.nih.gov.

[6] Kerry L. Ivey et al., *Association between yogurt, milk, and cheese consumption and common carotid artery intima-media thickness and cardiovascular disease risk factors in elderly women.* 2011 Am J Clin Nutr. 94(1):234-9, https://www.sciencedirect.com/science/article/pii/S0002916523023353?via%3Dihub.

[7] Karen Margolis et al.  *A diet high in low-fat dairy products lowers diabetes risk in postmenopausal women.* 2011 J Nutr. 141(11):1969-74, https://www.sciencedirect.com/science/article/pii/S0022316622031030?via%3Dihub.

[8] WebMD, *Health Benefits of Yogurt,* (February 14, 2023), https://www.webmd.com/diet/health-benefits-yogurt (last visited May 17, 2024).

6

sugar.[9]  While "yogurt powder" consisting of cultured whey and nonfat milk appears as a secondary ingredient of the "yogurt coating" (after sugar, palm kernel oil, whey powder, and nonfat milk powder), it is clearly present in such minute quantities as to have minimal (if any) nutritional value.[10]

24. To the extent that the coating can be considered "creamy," its texture derives from the alchemy of processed ingredients such as palm kernel oil, palm oil, coconut oil and soy lecithin, not from yogurt.

25. Moreover, completely absent from the ingredients of the "yogurt coating" are any live active yogurt cultures such as *L. Bulgaricus, S. Thermophilus*, *L. Acidophilus*, *Bifidus*, or *L. Casei*.  The addition of such bacterial cultures are a necessary component of yogurt, according to the Standards of Identity (SOI) established under the Federal Food, Drug & Cosmetic Act ("FDCA") which are intended to "promote honesty and fair dealing" and "to ensure that the characteristics, ingredients and production processes of specific foods are consistent with what consumers expect."[11]

26. According to the applicable SOI (last updated in 2021), "yogurt" is defined as:

> **the food produced by culturing one or more of the basic dairy ingredients** specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c) of this section **with a characterizing bacterial culture that contains the lactic acid-producing bacteria, Lactobacillus delbrueckii subsp. Bulgaricus and Streptococcus thermophilus**. The ingredients specified in paragraphs (b) and (c)

---

[9] Commercially available vanilla-flavored candy coatings contain similar ingredients.  For example, Great Value Vanilla Flavored Candy Coating contains sugar, palm kernel oil, palm oil, nonfat dry milk, soy lecithin (an emulsifier), whole milk, natural flavors and vanilla extract. https://www.walmart.com/ip/Great-Value-Vanilla-Flavored-Candy-Coating-16-oz/967028108.

[10]  https://www.medicalnewstoday.com/articles/295714 (last visited on May 17, 2024).

[11] https://www.fda.gov/food/food-labeling-nutrition/standards-identity-food (last visited May 17, 2024).

>of this section may be homogenized and must be pasteurized or ultra-pasteurized before the addition of the characterizing bacterial culture.

21 C.F.R. § 131.200(a)(emphasis added). While additional flavors, sweeteners, and vitamins, among other substances, may be added to the product without losing its identity as "yogurt," the FDCA makes clear that the inclusion of the "characterizing bacterial culture" is essential to being able to market a product as "yogurt." If the dairy ingredients are treated after culturing to remove microorganisms, the product label must contain the phrase "**does not contain live and active cultures**." 21 C.F.R. § 131.200(f)(ii) (emphasis added).

27. The product packaging for *Fruit 'n Yogurt Snacks*, despite its prominent claim to contain "creamy yogurt" and the complete absence of live cultures from its ingredient list, fails to state on the front panel that it "does not contain live and active cultures."

28. Simply put, the product label for *Fruit 'n Yogurt Snacks* is misleading because it suggests to a reasonable consumer that the product contains healthy and nutritious "creamy yogurt" (which, by definition, includes live bacterial cultures unless the label prominently states otherwise) when it does not.

29. Instead, the product is covered in a vanilla-flavored candy-like coating that consists primarily of sugar and other unhealthy ultra-processed ingredients such as palm kernel oil which have been associated with cardiovascular disease and obesity.[12] Moreover, while yogurt gets its naturally white color from dairy ingredients, the candy-like coating's hue derives from the addition of titanium dioxide (a common ingredient in sunscreen). Although the FDA

---

[12] Euridice Martinez Steele et al., *The burden of excessive saturated fatty acid intake attributed to ultra-processed food consumption: a study conducted with nationally representative cross-sectional studies from eight countries.* 2021 J. Nutr. Sci. 10:e43. doi:10.1017/jns.2021.30, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8190718/.

characterizes titanium dioxide as "safe," the European Food Safety Authority has recently cautioned against its use as a food additive because of new concerns about its potential genotoxicity.[13]

30.     A large review of studies on ultra-processed foods recently found that exposure to such foods was associated with thirty-two adverse health parameters "spanning mortality, cancer, and mental, respiratory, cardiovascular, gastrointestinal and metabolic health outcomes."[14] Published in 2024, such studies "are valuable because they look at large groups of people – the 2024 review included results from nearly 10 million — over the many years it can take for chronic health conditions to develop."[15]

31.     Consumers are increasingly aware of the dangers of ultra-processed foods and are willing to pay a higher price for products that are considered healthier and more natural. Businesses, including Defendants, prominently promote their products as containing yogurt, when they do not, in order to capitalize on consumers' belief in the health and nutritional benefits of yogurt.

32.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

---

[13] EFSA Panel on Food Additives and Flavourings, *Safety Assessment of Titanium dioxide as a Food Additive*. 2021 EFSA Journal https://doi.org/10.2903/j.efsa.2021.6585, https://efsa.onlinelibrary.wiley.com/doi/abs/10.2903/j.efsa.2021.6585.

[14] Melissa Lane et al.  *Ultra-processed food exposure and adverse health outcomes: umbrella review of epidemiological meta-analyses*. 2024. BMJ. 384:e077310. doi: 10.1136/bmj-2023-077310. PMID: 38418082; PMCID: PMC10899807.

[15] Alice Callahan. *How Bad Are Ultraprocessed Foods, Really?* The New York Times. May 6, 2024, https://www.nytimes.com/2024/05/06/well/eat/ultraprocessed-foods-harmful-health.html (last visited May 21, 2024).

## II. Plaintiff Purchased Relying on Defendants' Representations that the Products Were Healthy and Contained Yogurt

26. Plaintiff is a regular consumer of the mango and strawberry varieties of *Fruit 'n Yogurt Snacks,* often purchasing boxes from Wegman's, Walmart and Big Lot near her home in Rochester, New York for her two young grandsons. Most recently, in or about May 2024, Plaintiff purchased the product from her local Big Lot.

27. Prior to purchasing *Fruit 'n Yogurt Snacks* product, Plaintiff saw the product's packaging and, in particular, the representation on the front that the product contains fruit "surrounded by creamy yogurt."

28. Plaintiff purchased the *Fruit 'n Yogurt Snacks* reasonably believing that Defendants' product contains yogurt.

29. Plaintiff is aware of the health benefits of yogurt, including that it contains calcium, vitamins and active bacterial cultures, and reasonably believed she was purchasing a product that was healthy because it contained yogurt.

30. Had Plaintiff known that Defendants' *Fruit 'n Yogurt Snacks* Product does not contain yogurt, she would not have purchased Defendants' products or, at the very least, would not have paid a price premium for Defendants' *Fruit 'n Yogurt Snacks*.

## CLASS DEFINITION AND ALLEGATIONS

31. Plaintiff requests this Court enter an Order certifying this action as a Plaintiff Class Action or Plan pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1)(A), (B), 23(b)(2), and 23(b)(3) and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased *Fruit 'n Yogurt Snacks* in the State of New York (whether online or in-person) manufactured, marketed, distributed, and/or sold by Defendants which Defendants warranted as containing yogurt (the "Class Product"). Excluded from the class are Defendants, their parents, subsidiaries, affiliates, officers and

directors, judicial officers, and their immediate family members and associated court staff assigned to this case, and those who purchased Class Product for resale.

32. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

33. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

34. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendants' conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendants' conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendants labeled, packaged, advertised, marketed, and/or sold the Class Product with claims that it contained "creamy yogurt."

- Whether Defendants' labeling, packaging, advertising, marketing, and/or selling of the Class Product with claims that it contained "creamy yogurt" was and/or is false, fraudulent, deceptive, and/or misleading.

35. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendants' misrepresentations. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

36. **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff purchased a Class Product, and she was harmed by Defendants' deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a result of Defendants' conduct, as did all Class members who purchased Class Product.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

37. **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

38.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class.  Unless a Class is certified, Defendants will be allowed to profit from their deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

<u>**As and for a First Cause of Action**</u>
**(Violation of New York General Business Law Section 349)**

39. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

40. New York General Business Law Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York."

41. By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the Class Product contained "creamy yogurt" as set forth above, Defendants engaged in, and continue to engage in, deceptive acts and practices.

42. In taking these actions, Defendants failed to disclose material information about their products, which omissions were misleading in a material respect to consumers and resulted in the purchase of Defendants' products.

43. Defendants have deceptively labeled, packaged, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

44. Defendants' conduct was consumer oriented.

45. Defendants engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

46. Defendants' misrepresentations were misleading in a material respect because the Class Product does not contain "creamy yogurt."

47. Defendants knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing Class Product.

48. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendants' violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Defendants represent it to be.

49. By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendants are liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

50. Defendants' conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendants willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**As and for a Second Cause of Action**
**(Violation of New York General Business Law Section 350)**

51. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

52. Defendants' labeling, packaging, marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Defendants' sole possession and, thus, is "false advertising."

53. No rational individual would purchase the Class Product at the prices at which it is sold with full knowledge that the Class Product does not contain "creamy yogurt."

54. Defendants' labeling, packaging, marketing, and advertising of the Class Product as containing "creamy yogurt" was consumer oriented.

55. Defendants' labeling, packaging, advertisements, and marketing of the Class Product as containing "creamy yogurt" was misleading in a material respect, which induced Plaintiff and class members to purchase the product.

56. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by paying for a product that has diminished, lesser, or no value due to its false claims that the Class Product contains "creamy yogurt."

57. Defendants' conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendants are liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A. Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's First Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

  C. On Plaintiff's Second Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

  D. On Plaintiff's First and Second Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

  E. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 18, 2024
   White Plains, New York

          **DENLEA & CARTON LLP**

      By: _/s/ James R. Denlea_
          James R. Denlea
          (*pro hac vice forthcoming*)
          Jeffrey I. Carton
          (*pro hac vice forthcoming*)
          Craig M. Cepler
          Catherine H. Friesen
          (*pro hac vice forthcoming*)
          2 Westchester Park Drive, Suite 410
          White Plains, New York 10604
          Tel.: (914) 331-0100
          Fax: (914) 331-0105
          jdenlea@denleacarton.com
          jcarton@denleacarton.com
          ccepler@denleacarton.com
          cfriesen@denleacarton.com
          *Attorneys for Plaintiff*